George J. BARR, Petitioner,

v.

**RESOLUTION TRUST CORP., ex rel. SUNBELT FEDERAL SAVINGS,** Respondent.

No. D–2082.

Supreme Court of Texas.

Sept. 23, 1992.

Albert B. Greco, Jr., Barbara L. Wohl-rabe, Dallas, for petitioner.

Jack N. Ross, II, Dallas, for respondent.

OPINION

GONZALEZ, Justice.

The issue in this case is whether a claim by Sunbelt Federal Savings against George Barr based on a partnership promissory note and guarantee agreement is barred by the doctrine of res judicata. The trial court granted Barr's motion for summary judgment based on res judicata. The court of appeals, with one Justice dissenting, reversed the trial court's judgment, holding that the doctrine did not apply. 824 S.W.2d 600. We reverse the judgment of the court

of appeals and affirm the trial court's judgment.

In 1985, Barr and Ron Knott were partners in the Bar III Venture. On March 14, 1985 Bar III executed a promissory note for $369,750 in favor of Sunbelt's predecessor in interest. The same day, Barr and Knott executed a personal guarantee of the note. In March 1987, Bar III defaulted on the note.

On May 24, 1988, Sunbelt filed two separate lawsuits on the note. In one suit, Sunbelt alleged liability against the partnership as maker of the note and against Knott as guarantor of the note. In the other, Sunbelt alleged that Barr was personally liable because of his unconditional guarantee of the note.

Barr moved for summary judgment in the latter lawsuit on the grounds that the terms of the guaranty agreement were too uncertain to be enforceable. Barr argued that the agreement, a standard form containing a number of options to choose and blanks to complete, was not sufficiently completed to ascertain his liability. The trial court granted the motion, and rendered a final take-nothing judgment. Sunbelt did not appeal the judgment.

Thereafter, Sunbelt amended its pleadings in the suit against the partnership and Knott by adding Barr as a defendant, alleging that his status as a partner created liability for the note. Barr's answer asserted res judicata, among other defenses.

Barr moved for summary judgment on the grounds that the take-nothing judgment in the first lawsuit barred litigation of the claims against him in the second lawsuit. Sunbelt also moved for summary judgment, requesting a judgment on the

note. The trial court granted Barr's motion and denied Sunbelt's. This interlocutory judgment became final when the court rendered judgment for Sunbelt on its claims against the partnership and Knott for the full amount of the note.

Sunbelt appealed, arguing that the trial court should have granted its summary judgment instead of Barr's. The court of appeals, with one justice dissenting, determined that the first suit did not bar the second. However, the court concluded that questions of fact prevented rendition in Sunbelt's favor, and thus remanded the case to the trial court. Both Barr and Sunbelt sought review in our court.

■■■ Much of the difficulty associated with the doctrine of res judicata is due to the confusion of several related theories. Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex.1982). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel).[1] Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit.[2] *Bonniwell,* 663

1. Res judicata may be further categorized into merger and bar, because the doctrine has different applications depending on which party is successful in the prior suit. If the party asserting a claim prevails, the cause of action is merged into the judgment, and the cause of action as such ceases to exist. *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985). If the party defending a claim prevails in the prior suit, the judgment acts as a bar to matters which could have been litigated in the original suit. *Id.*

2. An example of the confusion concerning collateral estoppel is the court of appeals' holding that "res judicata does not preclude relitigation of issues that the first court did not actually try and determine, unless a determination of those issues was essential to the judgment in the first suit." 824 S.W.2d at 602. The court relied on RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982), which is entitled "Issue Preclusion—General Rule", i.e., collateral estoppel. *See Id.* § 17(3), and comment (c). We disapprove similar language in the case cited by the court, *Faour v.*

S.W.2d at 818. Barr's argument, that Sunbelt should have brought all theories of liability in one suit, is the defense of claim preclusion.

■ Claim preclusion prevents splitting a cause of action. *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985). The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata,* 28 Sw.L.J. 355, 358–59 (1974).

The question that has given courts the most difficulty is determining what claims should have been litigated in the prior suit. Early on, this Court held that res judicata "is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have decided." *Foster v. Wells,* 4 Tex. 101, 104 (1849). We have never repudiated this definition of claim preclusion, and it appears in some form in most definitions of res judicata. *See, e.g., Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985) (res judicata bars not only what was actually litigated but also claims that could have been litigated in the original cause of action). If taken literally,

this definition of the rule would require that all disputes existing between parties be joined, regardless of whether the disputes have anything in common. This court has resorted to a wide variety of theories and tests to give res judicata a more restrictive application.[3] *See generally* 5 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 131.06[4][b][ii] (1991); *Steakley,* 28 Sw.L.J. 355.

Even if only cases from more recent times are considered, our holdings with respect to res judicata are difficult to reconcile. In *Griffin v. Holiday Inns of America,* 496 S.W.2d 535 (Tex.1973) the court determined that a take-nothing judgment in a suit to recover in contract for services and materials did not preclude a subsequent suit to be compensated in quantum meruit. The court rejected the view that a judgment as to one claim is res judicata of all claims or causes of action arising out of the same transaction, and stated that, "[a]s a general rule a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to issues of fact actually litigated and determined in the first suit." *Id.* at 538. The court acknowledged, however, that alternative theories of recovery for the same "claim" may not be brought in different lawsuits.[4]

*Faour,* 762 S.W.2d 361 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

Our own recent holdings have contributed to the confusion by holding without elaboration that res judicata requires an "identity of issues" between the prior and subsequent suits. *See, e.g., Coalition of Cities for Affordable Utility Rates v. Public Utilities Commission,* 798 S.W.2d 560, 563 (Tex.1990); *Byrom v. Pendley,* 717 S.W.2d 602, 606 (Tex.1986); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). If an identity of issues is strictly required, then there is no basis for precluding issues that should have been raised in the prior suit but were not, and there is no distinction between claim preclusion and issue preclusion. *See Flores v. Edinburg Consolidated Indep. School Dist.,* 741 F.2d 773, 776 (5th Cir.1984).

3. See, e.g., *Philipowski v. Spencer,* 63 Tex. 604, 607 (1885) ("cause of action", being the grievance and wrong complained of, must be identical in both the earlier and subsequent suit, regardless of form of action); *Hanrick v. Gurley,* 93 Tex. 458, 56 S.W. 330, 330 (1900), (all matters

that could support the "claim or demand in controversy" in the prior suit would be precluded in a succeeding suit); *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97, 100 (1894) (pleader must use diligence in pleading all claims concerning the same "subject matter" of the suit); *Moore v. Snowball,* 98 Tex. 16, 81 S.W. 5, 8–10 (1904) (proof of legal title is sufficiently different from proof of equitable title so as to be different "cause of action" for res judicata purposes); *Ogletree v. Crates,* 363 S.W.2d 431, 436 (Tex.1963) (while suit to modify a divorce decree and suit to set it aside for fraud are technically different causes of action, they are the same "broad cause of action," and public policy requires all complaints concerning custody could and should have been brought in the same suit).

4. The court did not attempt to apply any test for res judicata to the facts in *Griffin.* Ultimately, the Court based its decision on stare decisis, because other courts had held that quantum meruit is not barred by a judgment on the contract. *Griffin,* 496 S.W.2d at 538. The court

Thus, in *Griffin,* the court determined that a "cause of action" for res judicata purposes is something more than the set of facts necessary to establish a single theory of recovery but not necessarily the entire transaction between the parties. *Id.* at 537–38. The court gave no guidance on the question of how to make this fine distinction between a mere alternative theory of recovery and a different cause of action. Every theory of recovery has its unique elements of proof. As the *Griffin* case illustrates, only slight variations of the facts to support different theories of the same incident can result in a court finding different causes of action, thus thwarting the purposes of res judicata. *See Steakley,* 28 Sw.L.J. at 361–62.

The court took an entirely different approach in *Westinghouse Credit Corp. v. Kownslar,* 496 S.W.2d 531 (Tex.1973). In that case Kownslar had guaranteed all promissory notes by the maker. The issue was whether res judicata required that Westinghouse bring in one suit its claims for all notes guaranteed by Kownslar that were then in default. Rather than decide whether there was more than one cause of action involved, the court decided the case solely on whether it appeared that the policies of res judicata required such a result.[5]

This pure policy approach as exemplified by *Westinghouse* makes it virtually impossible to determine in advance what policy will win out in any given case. Without any objective standards, each case is decided ad hoc, and therefore the doctrine is "inherently unpredictable" and "affords little basis for consistency and formulation of precedent." *Steakley,* 28 Sw.L.J. at 362–63. *Westinghouse* is the only case we have decided solely on policy grounds.

Then, in *Texas Water Rights Comm. v. Crow Iron Works,* 582 S.W.2d 768 (Tex. 1979), the court shifted the focus from the cause of action to the subject matter of the litigation. The question was whether a major lawsuit instigated to sort out water rights to the lower Rio Grande river precluded a subsequent suit based on the claim that during the pendency of that suit the plaintiff had purchased additional rights. The court concluded that the subsequent claim was barred, noting that:

> The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on *causes of action* or defenses which arise out of the same *subject matter* and which might have been litigated in the first suit.

*Id.* at 771–72 (emphasis added). *Accord, Gracia,* 667 S.W.2d at 519. Thus this definition is not consistent with earlier formulations of the rule, such as in *Griffin,* that only issues related to a single cause of action are barred in a subsequent suit. While we did not expressly overrule the *Griffin* test in either *Crow Iron Works* or *Gracia* we do so now.

■ A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit. *Gracia,* 667 S.W.2d at 519; *Crow Iron Works,* 582 S.W.2d at 772.

The definition of res judicata in *Gracia* and *Crow Iron Works* is substantially similar to the rule of compulsory counterclaims embodied in the rules of civil procedure. A party defending a claim must bring as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Tex.R.Civ.P. 97.

---

did so without discussion of the reasoning in the cases upon which it relied.

5. The court announced a two-step analysis. First the court looked to see if stare decisis decided the case, and determined that there was no controlling case. Second, the court looked to see "whether the factual situation presented is such that the purposes of the doctrine of merger shall be frustrated absent enforcement of the bar." 496 S.W.2d at 532.

The Restatement of Judgments also takes the transactional approach to claims preclusion. It provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. Restatement of Judgments § 24(1). A "transaction" under the Restatement is not equivalent to a sequence of events, however; the determination is to be made pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage."[6] *Id.* § 24(2).

We conclude that the transactional approach to claims preclusion of the Restatement effectuates the policy of res judicata with no more hardship than encountered under rule 97(a) of the rules of civil procedure. Modern rules of procedure obviate the need to give parties two bites at the apple, as was done in *Griffin*, to ensure that a claim receives full adjudication. Discovery should put a claimant on notice of any need for alternative pleading. Moreover, if success on one theory becomes doubtful because of developments during trial, a party is free to seek a trial amendment.

■ In the case now before us, there is no valid reason to subject Barr to two different lawsuits. In the suit brought previously against Barr, the bank alleged that he executed the guarantee on the same day and as part of the "same transaction" as the promissory note. In both suits Sunbelt seeks to hold Barr primarily liable for payment of the note and seeks the same amount of damages. Both suits require proof establishing the notes of the partnership, that the notes are due, and that the partnership has defaulted. The only factual allegation that Sunbelt pleaded in the second suit that was not in the first is that

Barr is a general partner of Bar III Venture.

It is clear that in this case the execution of the partnership note and Barr's guarantee of it were related in time and space and motivation, and the parties considered it as a single transaction. The issues of both claims form a convenient trial unit, whereas separate lawsuits would require significant duplication of effort of the court and the parties involved. With due diligence, the claim that Barr was liable because he is a partner could have been joined in the suit on his guarantee of the partnership note.

We reaffirm the "transactional" approach to res judicata. A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit. For these reasons, the judgment of the court of appeals is reversed and that of the trial court is affirmed.

---

**6.** In *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985), we cited section 24(2) of the Restatement as authority for the definition of claims preclusion. We did not clearly adopt the Restatement in that case, however.